IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


ARNOLD D. HERVY,
      Plaintiff,

vs.                                Case No.:  5:07cv58/RS/EMT

JAMES McDONOUGH, et al.,
      Defendants.
_____/

## **ORDER**

Plaintiff, a Florida inmate proceeding pro se and in forma pauperis, initiated this civil action by filing a complaint (Doc. 1).  Plaintiff's amended complaint, filed under 42 U.S.C. § 1983, is now before the court (Doc. 7).  From a review of the amended complaint (hereafter "complaint"), it is evident that the facts as presented fail to support a viable claim for relief.  The court will therefore allow Plaintiff an opportunity to correct this deficiency in a second amended complaint.

At all times relevant to this action, Plaintiff was an inmate at Apalachee Correctional Institution ("ACI").  Named as Defendants are James McDonough, Commissioner of the Florida Department of Corrections ("DOC"); Aramark Corporation; Ms. Thomas, Director of Food Services for Aramark Corporation at ACI; and Dorthy Braxston, a nurse at ACI (Doc. 7 at 1, 2).  Plaintiff alleges Defendant Thomas did not comply with a Jackson County court order finding ACI "not up to state codes and cleaness [sic]" (*id.* at 5).  Due to Defendant Thomas's failure to comply, Plaintiff alleges he contracted salmonella food poisoning in March 2006 (*id.*).  Plaintiff alleges Defendant Thomas acted "willfully and intentionally . . . with deliberate indifference to how others may be" affected (*id.* at 7).  Plaintiff alleges Defendant Aramark caused Plaintiff to receive salmonella food poisoning and negligently failed to "address problems at ACI" resulting in Plaintiff receiving a deadly infection, severe stomach pain, general suffering, and bleeding (*id.* at 6).  Plaintiff further

alleges Defendant Aramark refused to help Plaintiff (*id.*)  Plaintiff alleges Defendant Aramark "willfully and intentional[ly] . . . [acted] with deliberate indifference to how others may be affected" by its conduct (*id.* at 8).  On or about April 2, 2006, Plaintiff alleges he complained to Defendant Braxston about stomach pains but Defendant Braxston informed Plaintiff he had a stomach virus and "nothing can be done" (*id.* at 5).  Plaintiff was passing blood in his stool and had severe pain in his stomach (*id.*).  Plaintiff alleges that around this time ACI "had a corrintine [sic] put on it for three days" (*id.*).  Thereafter, Plaintiff learned that "something [] serious had happened" to him (*id.*).  Plaintiff alleges Defendant Braxston intentionally withheld "by positive willful, and aggressive conduct" treatment until mid-June 2006 (*id.* at 8).  Plaintiff further alleges that "Nurse White had a visual on blood in stool, culture test out of Jacksonville Health Department came back positive twice" (*id.* at 7).  Plaintiff also alleges Defendant McDonough, as a supervisor, knew about the quarantine and negligently failed to give proper treatment and care to Plaintiff (*id.* at 6).  Specifically, Plaintiff alleges Defendant McDonough committed a tort and violated his Due Process and Equal Protection rights by failing to provide Plaintiff with any treatment (*id.* at 9).  Finally, Plaintiff purports to assert a federal tort claim against all Defendants (*id.* at 10).  For relief, Plaintiff seeks $25,000.00 in compensatory damages from each Defendant, a bench trial, an internal exam for damages from bleeding, an independent review of the DOC's procedures, and discovery on all Defendants (*id.* at 9, 10).

Initially, Plaintiff's appears to allege liability against Defendant McDonough on the basis of his supervisory authority (*see* Doc. 7 at 5–6).  Supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Id.* (citation omitted).  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully

or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

To the extent Plaintiff seeks to hold Defendant McDonough liable due to his supervisory role over ACI, he has failed to state a claim. Plaintiff has not alleged a history of widespread abuse at ACI that would put Defendant McDonough on notice of a problem and the need to correct it, coupled with a failure to act. Indeed, Plaintiff's allegations suggest that the facility was quarantined when supervisory officials were notified of a problem (Doc. 7 at 5). Moreover, Plaintiff has not alleged, nor do the facts suggest, that it is a custom or policy of the DOC or Defendant McDonough to be deliberately indifferent to the civil rights of ACI inmates. Thus, unless additional facts exist and are alleged to support a claim against Defendant McDonough, Plaintiff should delete him as a Defendant in the second amended complaint.

Similarly, to the extent Plaintiff seeks to hold Defendant Aramark liable based on the actions of Defendant Thomas, Plaintiff has failed to state a claim.  Defendant Aramark cannot be held liable for Defendant Thomas' alleged actions on the basis of Aramark's supervisory role alone.

Next, Plaintiff has failed to state a constitutional claim of inadequate medical treatment as to Defendant Braxston.  Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Incidents of mere negligence or malpractice do not rise to the level of constitutional violations.  *Id.*  (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976)).  Similarly, a difference in medical opinion between the medical staff and an inmate as to the inmate's diagnosis or course of medical treatment does not support a claim of cruel and unusual punishment.  *Id.* (citations omitted).  Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component.  Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000), *cert. denied*, 531 U.S. 1077, 121 S. Ct. 774, 148 L. Ed. 2d 673 (2001).  First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'"  *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)).  Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements.  *Id.* at 1258.  As to the objective prong, an objectively serious deprivation requires a showing of an objectively "serious medical need."  Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer, 511 U.S. at 834, 114 S. Ct. at 1977 (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm.").  In addition, an

objectively serious deprivation requires a showing that the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06, 97 S. Ct. at 291–92 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105, 97 S. Ct. at 291. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245-46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).  "Deliberate indifference" and "mere negligence" are not one and the same. Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris v. Thigpen, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

In the instant case, Plaintiff does not allege a complete denial of medical care; rather, he appears to question the adequacy of the care received.  Plaintiff admits he was able to see medical personnel upon request but alleges Defendant Braxston did not adequately treat Plaintiff for salmonella poisoning (Doc. 7 at 5).  Defendant Braxston apparently believed that Plaintiff's condition did not warrant any treatment or follow-up examination(s).  Plaintiff, however, disagrees with Defendant Braxston's medical judgment.  The fact that Defendant Braxston's opinion differs from Plaintiff's opinion, does not support a claim of cruel and unusual punishment.  Moreover, even if Defendant Braxton's conduct was negligent, this is insufficient to state a claim. Unless Plaintiff

alleges facts showing that Defendant Braxston knew that her failure to provide treatment placed Plaintiff at serious risk of substantial harm, Plaintiff cannot establish a constitutional claim. Furthermore, Plaintiff has not alleged that Defendant Braxston intended for any denial of medical services to serve as a form of punishment.  Thus, under the facts alleged, Plaintiff has failed to state a claim for inadequate medical treatment as to Defendant Braxston.

To the extent Plaintiff attempts to raise a federal tort claim against the Defendants, Plaintiff is advised that in a claim under the Federal Tort Claims Act ("FTCA") the United States is the only appropriate defendant.  28 U.S.C. § § 1346(b), 2679(a); see Allen v. Veterans Admin., 749 F.2d 1386, 1388 (9th Cir. 1984); Stewart v. United States, 655 F.2d 741, 742 (7th Cir. 1981).  However, Plaintiff must allege facts establishing a claim against the United States, as the facts alleged in the instant complaint do not support such a claim.  Nevertheless, if Plaintiff wishes to pursue a FTCA claim, the court notes that Plaintiff appears to have failed to demonstrate he exhausted his administrative remedies with regard to any potential FTCA claim.  Federal law provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  Because this prerequisite is jurisdictional, any FTCA claim will be dismissed unless Plaintiff demonstrates that he exhausted his administrative remedies.  See Brackin v. United States, 913 F.2d 858, 859 (11th Cir. 1990).  Plaintiff should demonstrate exhaustion by attaching to his amended complaint a copy of the notification of final denial from the federal agency whose activities gave rise to the claim.

If Plaintiff wishes to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Second Amended Complaint**."  Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations.  Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form.  In the statement of facts, Plaintiff should

clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts.  If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint. Plaintiff's request for relief should be limited to only that which he could recover if he succeeds on his claims.  Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded.  N.D. Fla. Loc. R. 15.1.

Accordingly, it is **ORDERED**:

1.      The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983.  This case number should be written on the form.

2.      Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and titled "**Second Amended Complaint**."

3.      Plaintiff's failure to file an amended complaint may result in a recommendation that this action be dismissed for failure to comply with a court order.

**DONE AND ORDERED** this 18th day of May 2007.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**